A00A0761. WALL et al. v. CENTURY 21 WINNERVILLE REALTY, INC. et al.

(536 SE2d 798)

RUFFIN, Judge.

James and Evah Wall sued Century 21 Winnerville Realty, Inc., its president and qualifying broker, and two of its real estate agents, alleging that they wrongfully induced the Walls to purchase certain property. The trial court granted summary judgment to the defendants, and the Walls appeal. For reasons discussed below, we affirm.

Viewed in the light most favorable to the Walls, the evidence showed as follows. In August 1997, the Walls met with defendants Angela Joiner and Rej Joiner, two independent real estate agents working for Century 21, to discuss purchasing a home. The Walls said they wanted to be able to build a garage to house their motor home. Sometime later, Angela Joiner showed the Walls a house at 3919 Kelly Way in Valdosta.

The Walls subsequently met with Angela and Rej Joiner to prepare a contract offer on the house. During this meeting, Angela Joiner showed the Walls a copy of the restrictive covenants for the subdivision. Paragraph 5 provided that no building could be erected without the approval of the architectural control committee, which at the time consisted of Wayne Fann. Paragraph 15 stated that "[w]ritten approval . . . is required for any approval as set forth under these restrictive covenants." During the meeting, Rej Joiner telephoned Fann in the Walls' presence and told him that the Walls "wanted to be able to build a shed or a garage in which to park the motor home. And I wanted to make sure that it was going to be okay before they did the contract." According to Joiner, Fann "said that he had no problem with it, that it would be fine. His concern was that . . . the motor home not be too junky-looking, that it blend well with the house." Fann submitted an affidavit stating that he told Joiner that "if the purchasers complied with the requirements set forth in the Restrictive Covenants that a motor home garage should not be a problem." He said that he "did not tell [Joiner] that the purchasers needed my prior written approval of any plans for any proposed motor home garage," although he assumed that the purchasers would contact him to make "final arrangements."

On August 28, 1997, the Walls entered into a contract to purchase the house. This contract contained a special stipulation stating that "[c]ontract subject to approval from architectural committee to park and store mobile home and build workshop on property." The contract stated that Century 21 would act as a dual agent, representing both the buyers and the sellers.

Closing occurred on November 6, 1997. Rej and Angela Joiner were present for the closing, along with the Walls and the closing

attorney. The sellers were not present, but Angela Joiner had a limited power of attorney to sign the closing documents on their behalf. James Wall testified that, at the closing, the parties discussed the issue of architectural committee approval:

> Q. [D]id you have any conversations with [Rej and Angela Joiner] about the motor home, or any approval, or anything like that?
> A. At the time of the closing, we mentioned it to the lawyer. The lawyer asked. And at that time, they said there would be no problem.
> Q. Can you tell me . . . in as much detail as you remember actually how that conversation went?
> A. I would hate to even guess at it.
> Q. Who asked about the approval?
> A. I'm not exactly sure whether I asked the lawyer, or the lawyer asked us, but it was brought up.
> Q. And what was said?
> A. And Angela and Rej both said it was taken care of.

Evah Wall recalled the discussion as follows:

> Q. Were there any discussions at the closing about the garage or the RV?
> A. The attorney asked about it. They said that Angela and Rej said it had been approved, or it was okay. That was about all that was said. The attorney just said fine.

Rej Joiner denied that there were any discussions at the closing concerning the architectural committee approval, and Angela Joiner testified that she did not recall any such discussions.

After closing, the Walls began to build a garage on the property. After receiving complaints from neighbors, Fann visited the property and left a note stating that the garage was not acceptable and asking the Walls to contact him. At some point, a neighborhood meeting was held, and the neighbors voted against the garage. The Walls subsequently tore down the garage. Fann stated that, "[i]f the Walls had contacted me, . . . I would have worked with them towards reaching an acceptable location, design, and landscaping for the garage." The Walls subsequently listed the house for sale and filed this action against Century 21; Dean Blevins, its president and qualifying broker; and Angela and Rej Joiner.

1. In their fraud claim, the Walls assert that Rej and Angela Joiner fraudulently represented at closing that the stipulation requiring architectural committee approval had been "taken care of."

The essential elements of a fraud claim are as follows:

(1) a representation made by the defendant, (2) with the knowledge that it was false, (3) and with the intention of deceiving the plaintiff, (4) a reasonable reliance upon the representation by the plaintiff, and (5) loss by the plaintiff as a proximate result of the misrepresentation.[1]

At the outset we note that the evidence is extremely sketchy as to what the Walls claim transpired at the closing. Although James Wall testified that "we mentioned it," apparently referring to the approval, at the closing, he never stated exactly what the Joiners were supposedly asked by the closing attorney. When asked to provide the specifics of the discussion, he replied that he "would hate to even guess at it." When asked what the Joiners said in response to whatever question was asked, he indicated at one point that they said "there would be no problem," and at another point that they said "it" was "taken care of." Evah Wall was perhaps even more vague in describing the conversation, stating that the Joiners either said "it had been approved" or "it was okay." Moreover, her testimony suggests that the closing attorney related what the Joiners had supposedly said, not that the Joiners made the statement directly to her.

Thus, according to the Walls, the Joiners were asked something about the garage, although the precise question is not clear. The Joiners responded by stating either that "there would be no problem" or that "it" had been "taken care of" or was "okay" or "had been approved." Of course, without knowing exactly what question the Joiners were responding to, or exactly what their answer was, it cannot be determined whether their response was false. Saying that something is "okay" or that "there would be no problem" is quite different from saying that something has "been approved" or has been "taken care of." In this regard, we note that "[t]he testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is self-contradictory, vague, or equivocal."[2] Given the extremely vague and equivocal nature of the Walls' testimony, and the denial by the Joiners that they made any such statements at the closing, it is questionable whether there is any competent evidence that the Joiners in fact represented that approval for the garage had been obtained.

Even assuming that the Joiners made some such comment, there is no evidence that they knew the statement was false. Rej Joiner tes-

---

[1] *Empire Distrib. v. Hub Motors Co.*, 240 Ga. App. 568 (1) (524 SE2d 264) (1999).

[2] (Punctuation omitted.) *Douglas v. Sumner*, 213 Ga. 82, 85 (3) (97 SE2d 122) (1957). See also *Sharfuddin v. Drug Emporium*, 230 Ga. App. 679, 684 (3) (e) (498 SE2d 748) (1998) ("vague or equivocal testimony is . . . insufficient to create a triable issue at summary judgment").

tified that he believed Fann had given the necessary approval during his telephone discussion. Angela Joiner testified that she "assumed it was a done deal" because of this conversation. She testified that, "as far as my mind was concerned, Mr. Fann had approved the cover for the motor home." Regardless of whether Fann's statement was in fact sufficient to constitute approval under the restrictive covenant, there is simply no evidence that the Joiners knowingly made any false statement with the intent to deceive the Walls. Accordingly, the trial court did not err in granting summary judgment to the defendants on the fraud claim.

2. In their complaint, the Walls also alleged that the defendants "constructively defrauded" them "by their negligen[t] acts." However, "constructive fraud is an equitable doctrine and will not support an action for damages."[3] Because the Walls do not seek equitable relief, but simply seek money damages, the trial court did not err in granting summary judgment on this claim.[4]

3. The Walls also contend that the trial court erred in granting summary judgment on their claim for professional malpractice. In this regard, they claim that the defendants "failed to disclose the material fact at the time of closing that no written approval for the construction of the garage and workshop had been obtained or was forthcoming from the Architectural Control Committee."

OCGA § 10-6A-4 (a) states that

> [a] broker who performs services under a brokerage engagement for another is a limited agent, unless a different legal relationship between the broker and the person for whom the broker performs the service is intended and is reduced to writing and signed by the parties. . . . Except as set out in this chapter, a limited agent shall not be deemed to have a fiduciary relationship with any party or fiduciary obligations to any party but shall only be responsible for exercising ordinary care in the discharge of its specified duties under the brokerage engagement.

Pursuant to OCGA § 10-6A-7 (a) (2) (C), a broker engaged by a buyer is required to "[d]isclos[e] to the buyer material facts [of] which the broker has actual knowledge concerning the transaction." When a broker acts as a dual broker for the buyer and seller, "each client and broker and their respective licensees possess only actual knowledge

---

[3] (Punctuation omitted.) *Consolidated American Ins. Co. v. Spears*, 218 Ga. App. 478, 479 (1) (462 SE2d 160) (1995). See also *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 187 (4) (450 SE2d 452) (1994).

[4] See id. (reversing jury award of damages due to instruction on constructive fraud).

and information. There shall be no imputation of knowledge or information among or between the clients, brokers, or their affiliated licensees."[5]

Nothing in the brokerage agreement imposed upon the defendants the obligation to obtain approval from the architectural committee or to determine whether such approval had been obtained in the proper form. To the contrary, the sales contract specifically stated that

> Brokers shall not be responsible to advise Buyer and Seller on any matter, including . . . the uses . . . of the Property whether permitted or proposed. Buyer and Seller acknowledge that Brokers are not experts with respect to the above matters and that, if any of these matters or any other matters are of concern to them, they shall seek independent expert advice relative thereto. . . . No Brokers shall owe any duty to Buyer or Seller greater than is set forth in the Brokerage Relationships in Real Estate Transactions Act, OCGA [§] 10-6A-1 et seq.

Since defendants undertook no duty to ensure that the necessary approvals were obtained, or that any such approvals were in the proper form, and there is no evidence that they had actual knowledge that the contingency set forth in the contract had not been satisfied, their failure to affirmatively notify the Walls that the approvals had not been obtained cannot form the basis of a suit for professional malpractice.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 30, 2000.

*Jon W. McClure*, for appellants.
*Weissman, Nowack, Curry & Wilco, Ned Blumenthal*, for appellees.

---

[5] OCGA § 10-6A-12 (d).