## A05A2202. TRAVICK v. LEE.
(630 SE2d 99)

SMITH, Presiding Judge.

This is an appeal from a grant of summary judgment under OCGA § 51-1-29.1, the immunity statute for voluntary health care providers. Because the trial court incorrectly held that conflicting deposition and affidavit testimony did not create an issue for the jury, we reverse the trial court's grant of summary judgment in favor of the appellee.

Angela Travick, as administratrix of the estate of Vincent Harris, Sr., brought this medical malpractice action against John Wesley Lee, M.D., Columbus Regional Health Care System, Inc., The Medical Center, Inc. and three John Doe defendants. Travick alleged that Lee and others negligently failed to treat a swollen mass in Harris's neck in a timely manner, resulting in his death.

Lee filed a motion for summary judgment asserting his immunity from suit based on OCGA § 51-1-29.1, contending that he treated Harris voluntarily and without the expectation or receipt of compensation. According to Lee, he was a voluntary, on-call doctor who was required by his agreement with The Medical Center to see its patients when he was on call, regardless of their ability to pay. He did not anticipate or receive payment for his voluntary, on-call services to The Medical Center.

Lee's office manager testified that Harris was never billed, that there was no expectation that he would pay anything, that he never paid anything, and that nothing was paid on his behalf. When Harris arrived at Lee's office, he filled out a patient information sheet, indicating that he was unemployed and had no insurance. A list of methods of payment by cash, check, or credit card appeared at the bottom of this form, and Harris circled the word "check." The office manager testified that patients sometimes would indicate a method of payment even though they had no money, instead of leaving it blank. A computer-generated account summary identified by the office manager showed no charges and a zero balance for Harris, but inexplicably was dated the day before Harris presented for treatment. The office manager also testified that Harris told her he was unemployed and had no money, but his mother "may send you something."

Travick responded with the affidavits of Harris's mother and girlfriend, asserting that Harris "discussed a payment arrangement with someone at the doctor's office." According to Harris's girlfriend, Harris discussed payment with Lee's office employee and told the employee "that he had no insurance but that he could make payments." Simultaneously with her response to Lee's motion, Travick filed a new affidavit from a physician asserting that Lee was guilty of

"a gross disregard for the applicable standard of care" for physicians generally. A few days later, Travick amended her complaint to allege gross negligence on the part of Lee. The trial court denied Lee's motion for summary judgment, stating that it did so based largely upon the affidavit of Harris's girlfriend.

Lee then took the depositions of Harris's mother and girlfriend. Harris's mother denied having any conversation with Lee or anyone in his office regarding payment. Harris's girlfriend testified that she remembered "being at the window" in Lee's office, but she did not remember speaking to anyone. At some point, Harris told her that he needed $300, but she "didn't hear [Harris] and the lady talk about the money" and she "couldn't swear" that Harris and Lee's office employee discussed payment "because I'm not sure." She acknowledged that she did not hear anyone ask Harris how he intended to pay and that she was not aware of anyone making any payment to Lee's office.

Based on this new evidence, Lee filed a renewed motion for summary judgment. In its order, the trial court examined the evidence and found that Lee had presented evidence that he had no expectation of payment and had not received payment, evidence which Travick had failed to rebut given the change in testimony from the original affidavits. Holding that a trial court may disregard an affidavit which is inconsistent with the deposition testimony of the witness, the trial court concluded that the circumstantial evidence set forth by Travick "taken cumulatively . . . with the false affidavit is legally insufficient to challenge the evidence set forth by defendant Lee." The court also found no evidence of gross negligence and granted summary judgment, from which Travick appeals.

OCGA § 51-1-29.1 (a) provides:

> (a) Without waiving or affecting and cumulative of any existing immunity from any source, unless it is established that injuries or death were caused by gross negligence or willful or wanton misconduct:
> (1) No health care provider licensed under Chapter 9, 11, 26, 30, 33, or 34 of Title 43 who voluntarily and without the expectation or receipt of compensation provides professional services, within the scope of such health care provider's licensure, for and at the request of a hospital, public school, nonprofit organization, or an agency of the state or one of its political subdivisions or provides such professional services to a person at the request of such an organization, which organization does not expect or receive compensation with respect to such services from the recipient of such

services.[1] Nothing in this Code section shall be construed to change the scope of practice of any health care provider granted immunity in this Code section; or

 (2) No licensed hospital, public school, or nonprofit organization which requests, sponsors, or participates in the providing of the services under the circumstances provided in paragraph (1) of this subsection

shall be liable for damages or injuries alleged to have been sustained by the person nor for damages for the injury or death of the person when the injuries or death are alleged to have occurred by reason of an act or omission in the rendering of such services.

An affidavit that a physician received no payment from anyone in connection with the services provided to an on-call patient or for such services generally is sufficient to establish a prima facie case that the physician is entitled to the immunity established by this Code section. *Washington v. Clark*, 250 Ga. App. 242, 244 (1) (550 SE2d 671) (2001) (physical precedent only); see also *Willingham v. Hudson*, 274 Ga. App. 200, 207 (1) (617 SE2d 192) (2005) (citing *Washington* with approval). Lee thus established a prima facie case which Travick was required to rebut. *Washington*, supra at 244 (2).

The affidavits of Harris's mother and girlfriend, based on personal knowledge, state positively that Harris discussed payment arrangements with Lee's office. This rebuts Lee's prima facie case by presenting evidence that Lee had some expectation of compensation. The trial court recognized this when it denied the first motion for summary judgment on the basis of the affidavits. The deposition testimony of the witnesses triggered Lee's renewed motion for summary judgment and the trial court's grant of the second motion. This shows both that the affidavits are in conflict with the witnesses' subsequent depositions and that the conflict formed the basis of the trial court's ruling on the renewed motion for summary judgment. But the resolution of this conflict is for the jury, not the trial court.

In ruling on Lee's second motion for summary judgment, the trial court relied on *Simone v. Hancock Textile Co.*, 175 Ga. App. 191 (332 SE2d 669) (1985), to construe the contradictory testimony against the witnesses, but this reliance was misplaced. In accord with the leading case of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (1) (343 SE2d 680) (1986), *Simone* holds:

---

[1] We recognize that this sentence, although lengthy, is incomplete. But this is the language of the statute, verbatim.

Although we construe the evidence most favorably to appellant as the party opposing the motion for summary judgment, where there is a direct contradiction in the testimony of the respondent as to a material issue of fact, *that party's* unfavorable testimony will be taken against him.

(Citations and punctuation omitted; emphasis supplied.) *Simone,* supra at 193 (2). As the Georgia Supreme Court has observed, *Prophecy* and its progeny are applicable *only* to the testimony of a party to the litigation. "[O]ur precedent has remained clear that the rule applies only to the testimony of parties to a case, and not to the testimony of witnesses who are not parties. Likewise, the Court of Appeals has declined to extend the *Prophecy* rule to anything other than the testimony of a party or a party witness." (Citations and footnotes omitted.) *Thompson v. Ezor,* 272 Ga. 849, 852-853 (2) (536 SE2d 749) (2000). In *Thompson,* the Georgia Supreme Court declined to apply the *Prophecy* rule to nonparty expert witnesses giving a malpractice affidavit in compliance with OCGA § 9-11-9.1. The Georgia Supreme Court has also cited *Thompson* for the principle that "[t]he *Prophecy* rule applies only to self-contradictions in a party's sworn testimony. It does not apply to . . . non-party witness testimony." (Citations and footnotes omitted.) *CSX Transp. v. Belcher,* 276 Ga. 522, 523 (1) (579 SE2d 737) (2003). Although dicta, this statement seems to set clear limits on the Georgia Supreme Court's willingness to extend *Prophecy* to nonparties.

On the other hand, it is perhaps significant that the Georgia Supreme Court cited public policy in support of the exception of nonparty experts from the *Prophecy* rule:

> Specifically, the *Prophecy* rule is aimed at discouraging a party's temptation to commit perjury during a civil trial's summary judgment phase: The rule must necessarily be applied to summary judgment proceedings, otherwise any opposing party may, by the simple device of filing conflicting affidavits, get the motion denied. The temptations to perjury are greater in this situation than in a jury trial.

(Citations, punctuation and footnotes omitted.) *Thompson,* supra, 272 Ga. at 852 (2). The affidavits in this case present a much closer question than the expert affidavit required by OCGA § 9-11-9.1 in *Thompson.* Harris, of course, is deceased, and his executrix is a nominal party. The affidavits provide factual testimony from eyewitnesses who are closely related to Harris — his mother as well as his girlfriend and mother of his child. They presumably stand to benefit from a resolution of the motion for summary judgment in Travick's

favor. An argument can be made that Harris's survivors, although not parties to the action, stand in his shoes and could be considered as functional parties for the purposes of a *Prophecy* analysis. It appears that the trial court, perhaps understandably, treated these witnesses as parties.

But in light of the Georgia Supreme Court's observation that this would be the first case applying the *Prophecy* rule to nonparties, *Thompson*, supra, 272 Ga. at 851 (2), we are unwilling to extend the rule to this extent in the face of explicit Supreme Court precedent. The affidavits of Harris's mother and girlfriend, despite conflicts with their subsequent depositions, create an issue of fact with regard to Lee's expectation of payment that requires resolution by a jury. The trial court therefore erred in granting Lee's motion for summary judgment on the basis of OCGA § 51-1-29.1.

*Judgment reversed. Ellington and Adams, JJ., concur.*

DECIDED MARCH 30, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006 — 

*Edmond & Jones, Roderick E. Edmond, Craig T. Jones,* for appellant.

*Hatcher, Stubbs, Land, Hollis & Rothschild, Robert C. Martin, Jr., Sarah E. Hart, Tisinger, Tisinger, Vance & Greer, Paul D. Ivey, Jr.,* for appellee.