A06A1775. WHITLEY et al. v. PIEDMONT HOSPITAL, INC. et al.
A06A1776. WILLIAMS v. PIEDMONT HOSPITAL, INC. et al.
(644 SE2d 514)

BARNES, Chief Judge.

These appeals arise from a medical malpractice action filed by Leon Whitley and his wife Mary Whitley for damages resulting from complications from Leon Whitley's coronary bypass surgery which resulted in the loss of his right leg below the knee. Mary Whitley sues for loss of consortium.

In Case No. A06A1775 the Whitleys appeal the grant of summary judgment to all the defendants in the medical malpractice action, and Case No. A06A1776 is an appeal by Dr. Larry Williams, an expert witness on behalf of the Whitleys, from the trial court's order enjoining Dr. Williams from testifying in Division YY of the State Court of Fulton County. Because both appeals arise from the same medical malpractice action and were decided in the same order, we have consolidated them for disposition on appeal.

On March 12, 1996, coronary bypass surgery was performed on Mr. Whitley at Piedmont Hospital by Dr. Alexander Justicz of Peachtree Cardiovascular & Thoracic Surgeons, P.A. During the surgery an

[13] *West v. CSX Transp.*, 230 Ga. App. 872, 875 (3) (a) (498 SE2d 67) (1998).

intra-aortic balloon pump ("IABP") was inserted through Mr. Whitley's right femoral artery. After the surgery, Mr. Whitley was admitted to the hospital's intensive care unit ("ICU"), and nurses employed by Piedmont Hospital monitored Mr. Whitley's leg for signs of ischemia, i.e., reduction in blood flow. While he was in the ICU, Mr. Whitley also was examined by his own doctors and nurses employed by those doctors.

After the IABP was removed on March 14, 1996, Mr. Whitley experienced pain and signs of ischemia began to appear. His physicians were notified and they determined that he was developing "compartment syndrome." Even though several surgeries were performed, Mr. Whitley's lower right leg was ultimately amputated.

The Whitleys filed suit against Piedmont Hospital, Inc.; Peachtree Cardiovascular & Thoracic Surgeons, P.A.; Cardiac Disease Specialists, P.C.; Alexander Justicz, M.D.; and William Carlisle Jacobs, M.D. Dr. Justicz was the surgeon who performed the bypass surgery on behalf of his medical group, Peachtree Cardiovascular & Thoracic Surgeons, P.A., and Dr. Jacobs was Mr. Whitley's cardiologist from the medical group, Cardiac Disease Specialists, P.C.[1]

The Whitleys alleged that all the defendants and their employees "had a duty to properly monitor, observe, diagnose, and treat Leon Whitley after his coronary surgery by monitoring and assessing the function of the intra-aortic balloon pump and ensuring that the pump did not impair circulation in Leon Whitley's right leg so as to pose a threat to the health of his right leg." The complaint further alleges that the defendants breached that duty of care and as a result, the circulation of Mr. Whitley's leg became compromised, his leg deteriorated, the viability of his leg was threatened, and the compromised condition of his leg was ignored. By taking these actions, the defendants breached the standard of care, and their professional negligence was the direct and proximate cause of the amputation of Mr. Whitley's right lower leg.

The defendants answered denying liability, and after discovery, particularly the deposition of Dr. Williams, Piedmont Hospital, Dr. Jacobs, and Cardiac Disease Specialists moved for summary judgment. Piedmont Hospital contends the Whitleys did not establish a causal connection between any negligence of its nurses and Mr. Whitley's injuries. Dr. Jacobs and Cardiac Disease Specialists contend that Dr. Williams' deposition testimony established that they had no duty to monitor Mr. Whitley's condition until the morning of March 13 and that any care they gave on that morning did not proximately cause Mr. Whitley's injuries.

---

[1] This is a renewal action that was dismissed previously.

The hospital maintains that regardless of any communications failure between its nurses and Mr. Whitley's physicians, the physicians were fully aware of Mr. Whitley's condition during the critical time, and independently decided not to intervene medically. Thus, the hospital contends, any communication would not have altered Mr. Whitley's course of treatment or the ultimate outcome.

Piedmont Hospital also contends that the physicians' awareness of Mr. Whitley's medical condition and their decision not to order additional medical intervention was an intervening cause of Mr. Whitley's injuries. Therefore, the nurses' actions were not the proximate cause of Mr. Whitley's injuries. *McQuaig v. McLaughlin*, 211 Ga. App. 723, 726 (1) (b) (440 SE2d 499) (1994) (no proximate cause where an independent act or omission of someone other than the defendant has intervened between the act of the defendant and the injury to the plaintiff).

The Whitleys, however, assert that nurses employed by Piedmont Hospital negligently failed to notify Mr. Whitley's attending physicians of the changes in his condition and that someone at the hospital altered Mr. Whitley's medical records. They contend that if the nurses had timely informed Mr. Whitley's physicians of the changes in his condition between March 12, 1996, at 7:00 p.m. and March 13, 1996, at 7:00 a.m., the physicians would have ordered the medical procedures necessary to prevent the amputation of Mr. Whitley's leg.

According to Dr. Williams' OCGA § 9-11-9.1 affidavit,[2] Dr. Justicz, Dr. Jacobs, and the Piedmont Hospital nurses had a duty to monitor the condition of Mr. Whitley's right leg during his hospitalization. Based upon Dr. Williams' personal knowledge of the standard of care, he stated that Dr. Justicz, Dr. Jacobs, and the Piedmont Hospital nurses all "were negligent and deviated from the standard of care applicable to such professionals under like and similar circumstances in failing to appropriately monitor, diagnose, and intervene regarding the compromised circulation of Mr. Whitley's right leg. . . ." He further stated that if these defendants had not violated the standard of care, there would have been no need to amputate Mr. Whitley's lower right leg.

When first deposed, Dr. Williams conceded that notwithstanding the alleged lack of communication between Piedmont Hospital's nurses and Mr. Whitley's physicians, those physicians were fully aware of Mr. Whitley's condition and independently decided that no

---

[2] Although another expert provided the OCGA § 9-11-9.1 affidavit for the Whitleys' first complaint, that expert's affidavit is not in issue in this case, and the Whitleys relied upon Dr. Williams as their expert.

additional medical interventions were necessary. Therefore, he said, the alleged negligence of the nurses did not cause any injury to Mr. Whitley.

Specifically, Dr. Williams testified that Mr. Whitley's charts reflected that the physicians' nurse was aware at 8:45 a.m. of a change in his pulses that occurred at 7:00 p.m. the night before. As the nurse who took that morning pulse worked for the doctor, he testified that it would be fair to make the "small logic jump that this physician's representative" is not the Piedmont Hospital's nursing staff. He further testified that, as Mr. Whitley's charts showed that his physicians did not respond after the 8:45 a.m. reading of Mr. Whitley's pulses, it was "probably reasonable" to conclude that no intervention would have been taken earlier if they had been notified earlier. Thus, Dr. Williams agreed that the failure to notify the physicians earlier "did not have any effect on Mr. Whitley's treatment." He also agreed that any deviation from the standard of care by the nurses until the night of March 13 in failing to notify the physicians about the status of Mr. Whitley's right leg did not cause any harm to Mr. Whitley because it did not appear that the physicians would not have responded to the notice.

After this deposition, the Whitleys' attorney prepared a second affidavit for Dr. Williams. In this affidavit, Dr. Williams stated that Piedmont Hospital's nurses had changed Mr. Whitley's medical charts, and again connected causally the nurses' actions and Mr. Whitley's injury by stating that in his opinion the nurses' failure to notify any of the treating physicians about the significant decrease in Mr. Whitley's "right foot blood flow" caused and contributed to the loss of Mr. Whitley's leg.

Dr. Williams was subsequently deposed about these statements. He again agreed that, because the physicians' representatives were there, it was reasonable to assume that the physicians were aware of the changes in Mr. Whitley's pulse, and that nothing in the allegedly altered medical records changed that opinion.

Ultimately, after a hearing during which the trial court closely questioned the Whitleys' attorney about various inconsistencies between Dr. Williams' depositions and his affidavits, the trial court found the doctor's testimony unworthy of belief, struck his affidavits, and granted summary judgment to the moving parties, Piedmont Hospital, Dr. Jacobs, and Cardiac Disease Specialists. The trial court then dismissed with prejudice the Whitleys' claims against the nonmoving parties, Dr. Justicz and Peachtree Cardiovascular & Thoracic Surgeons, because the trial court found that the Whitleys had "engaged in a pattern of conduct that constitutes an abuse of the civil litigation process."

During the hearing, after the trial court had indicated its opinion about Dr. Williams' credibility, the Whitleys orally moved to recuse the judge, but the court denied the motion. Following this hearing, the Whitleys filed the affidavit of a second physician in support of their case. Later, they asserted the motion to recuse the judge in writing, but the court denied this motion as well, and banned Dr. Williams from appearing as an expert witness in its division of the State Court of Fulton County. The court found further that the affidavit from the second expert physician stated mere conclusions which were not sufficient to rebut the motion for summary judgment. These appeals followed.

## Case No. A06A1775

1. The Whitleys contend the trial court erred by granting summary judgment to all defendants because substantial evidence showed that the defendants breached the standard of care by ignoring the diminished blood flow in Mr. Whitley's leg. They also contend the trial court erred by granting summary judgment, sua sponte, to Peachtree Cardiovascular & Thoracic Surgeons and Dr. Justicz on the erroneous assumption that the Whitleys' claims against those defendants were the same as against the defendants who had moved for summary judgment. They further contend the trial court erred by excluding Dr. Williams' affidavit, by disregarding the affidavit of their second expert, by refusing to comply with the uniform court rules to recuse or disqualify itself, and by banning Dr. Williams from the court.

In Georgia,

> [s]ummary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). We apply a de novo standard of review to an appeal from a grant of summary judgment and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Ponder v. Brooks*, 256 Ga. App. 596, 597 (569 SE2d 267) (2002).

We need not address whether the movants demonstrated that they were entitled to summary judgment on the merits of their

motions because it is clear that the trial court granted the motions because it found that the affidavits and deposition testimony of Dr. Williams as related to the causation issue had "been conflicting, lacking in credibility and apparently untruthful." The trial court's order further states:

> Regardless, this court concludes that Dr. Williams' testimony does not establish a causal link between Piedmont's alleged negligence and Mr. Whitley's injuries, and, in fact, Dr. Williams has testified affirmatively that no such causal link exists. As such, his testimony is not sufficient to create a genuine issue of material fact on the issue of proximate causation.

Those are findings, however, that the trial court is not authorized to make when considering motions for summary judgment. The first finding is a determination reserved for juries in this state, OCGA § 24-9-80 ("credibility of a witness is a matter to be determined by the jury under proper instructions from the court"), and as the second finding ignores Dr. Williams' affidavit testimony to the contrary, it is obviously dependent upon the first.

In effect, the trial court applied our state's contradictory testimony rule when it rejected Dr. Williams' affidavits and testimony. This is not permitted when the contradictory testimony is of a nonparty witness, even an expert witness. In *Ezor v. Thompson*, 241 Ga. App. 275 (526 SE2d 609) (1999), this court held that the self-contradictory testimony rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), did not apply to the testimony of a nonparty expert witness. This holding was affirmed by our Supreme Court in *Thompson v. Ezor*, 272 Ga. 849 (536 SE2d 749) (2000).

In *Ezor v. Thompson*, supra, 241 Ga. App. at 278, we held that

> [i]n light of this long-standing precedent, we find no reason to apply a different rule to expert non-party witnesses. A party has no greater power to prevent contradictions between experts or within an expert's testimony than with regard to fact witnesses. Although an expert may be paid, those circumstances may be explored on the stand, and any question of bias is for the jury. As we have previously held, the fact that an expert's testimony may be contradictory goes only to the weight or credibility of the testimony and does not render it inadmissible. *Furse v. O'Kon*, 153 Ga. App. 703 (2) (266 SE2d 343) (1980); see also OCGA §§ 24-9-80; 24-9-85.

Id. We also noted that Georgia law provides another remedy for possible perjured testimony by a witness. "OCGA § 24-9-85 (b) states that under certain circumstances, testimony from a witness who has wilfully and knowingly sworn falsely shall be disregarded entirely." Id. at n. 3.

In affirming our decision, the Supreme Court of Georgia noted that when Ezor sued the physician and heath care facilities, the complaint was supported with the OCGA § 9-11-9.1 affidavit of a physician who stated that the defendants violated the standard of care. Then, during his deposition, the doctor testified that rather than being "negligent, [the defendants'] conduct was against 'conventional wisdom' and 'the party line,'" conceded that the defendants' practices may have been way ahead of the rest of the physician's profession, and admitted that he was not sure that Ezor had been harmed by one of the operations. When the defendants moved for summary judgment based on this testimony, Ezor filed another affidavit from the doctor stating that the defendant doctor had violated the standard of care and that Ezor had been harmed as a result. *Thompson v. Ezor*, supra, 272 Ga. at 850. The Supreme Court agreed that the contradictory testimony rule could only be applied to parties to the action, holding that the "contradictions go solely to the expert's credibility, and are to be assessed by the jury when weighing the expert's testimony." Id. at 853.

Although we are concerned, as was the trial court, about Mr. Whitley's counsel's involvement in the preparation of the unexplained, contradictory testimony, "we are unwilling to extend the [*Prophecy*] rule to this extent in the face of explicit Supreme Court precedent." *Travick v. Lee*, 278 Ga. App. 823, 827 (630 SE2d 99) (2006).

Consequently, notwithstanding the inconsistencies in his testimony, the trial court should have given the Whitleys "the benefit of the most favorable version of such testimony as a whole which the jury would be authorized to accept." *North Ga. Elec. Membership Corp. v. Webb*, 246 Ga. App. 316, 319 (1) (b) (540 SE2d 271) (2000). Giving the Whitleys the benefit of all reasonable doubt and the construction of the evidence and all inferences and conclusions therefrom most favorably as the parties opposing the motion, *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988), Dr. Williams' affidavits were sufficient to create genuine issues of material fact on the breach of care and causation. Accordingly, the trial court erred by granting summary judgment to Piedmont Hospital.

Although we recognize that OCGA § 9-11-56 (g) allows a trial court to impose sanctions when it should "appear to the satisfaction of the court at any time that any of the affidavits presented pursuant

to this Code section are presented in bad faith or solely for the purpose of delay," the sanctions provided for in this Code section do not authorize the trial court to strike or disregard the affidavits presented by such a party as a sanction. Instead, the statute authorizes the trial court to impose other sanctions against an offending party, such as payment of expenses or adjudication of contempt.

2. We find that the trial court correctly struck the affidavit of Dr. David Bregman as being merely conclusory. Dr. Bregman's affidavit merely recited that if the defendants "had conducted themselves in accord with the standard of care applicable," without stating what that standard was, then Mr. Whitley "would have received appropriate intervention for the compromised circulation" of his leg. He further stated that "to a reasonable degree of medical certainty" Mr. Whitley's injury would have been avoided if the defendants "had complied with the standard of care." This affidavit which stated no "particulars" is not sufficient to rebut the motion for summary judgment. *Bregman-Rodoski v. Rozas*, 273 Ga. App. 835, 837 (616 SE2d 171) (2005); *Hailey v. Blalock*, 209 Ga. App. 345, 347 (2) (433 SE2d 337) (1993).

3. The Whitleys contend the trial court erred by granting summary judgment to Dr. Justicz and Peachtree Cardiovascular & Thoracic Surgeons, P.A., because those defendants did not move for summary judgment. The record shows, however, that rather than granting summary judgment, the trial court dismissed these claims with prejudice because it found that the Whitleys abused the civil litigation process. As none of our statutory provisions dealing with abusive litigation, see, e.g., OCGA §§ 13-6-11; 9-15-14; 51-7-81, authorize dismissal as a sanction,[3] it is not readily apparent what standard should be employed in reviewing the trial court's decision. Because the dismissal was based upon evidentiary grounds, use of the summary judgment standards is most appropriate.

> Although our law concerning motions for summary judgment allows a trial court to grant, sua sponte, a summary judgment, a trial court's authority to do so is not unlimited. The grant of summary judgment must be proper in all other respects. This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that

---

[3] Indeed, OCGA § 51-7-85 provides that
[o]n and after April 3, 1989, no claim other than as provided in this article or in Code Section 9-15-14 shall be allowed, whether statutory or common law, for the torts of malicious use of civil proceedings, malicious abuse of civil process, nor abusive litigation, provided that claims filed prior to such date shall not be affected. This article is the exclusive remedy for abusive litigation.

the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment.

(Citations and punctuation omitted.) *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995).

Although the Whitleys were given the opportunity to respond to motions for summary judgment by Dr. Jacobs, Cardiac Disease Specialists, P.C., and Piedmont Hospital, the record does not show that they were given an opportunity to respond to a possible dismissal of their claims against Dr. Justicz and Peachtree Cardiovascular & Thoracic Surgeons on the grounds that the Whitley's "pattern of conduct . . . constitutes an abuse of the civil litigation process."

The trial court based its dismissal on its conclusion that the Whitleys

improperly manipulated the expert testimony of Dr. Larry Williams and Dr. David Bregman for the sole purpose of eluding summary judgment, and that [they] deliberately misled the court for the purpose of obtaining additional time to respond to Piedmont Hospital's motion. Such misconduct was apparently intended to help [the Whitleys] avoid summary judgment on the issue of causation, and it comprises a sufficient basis for dismissing [the Whitleys'] claims against Dr. Justicz and Peachtree Cardiovascular.

The order recites how Dr. Williams' OCGA § 9-11-9.1 affidavit set out the standard of care and "attempted to establish a causal connection" between the violations of the standard of care and Mr. Whitley's injuries, how his first deposition disavowed those causation opinions in his affidavit, how the Whitleys' counsel spoke with Dr. Williams and caused him to sign an errata sheet prepared by the attorney that altered his deposition testimony, how the Whitleys submitted a second affidavit from Dr. Williams attempting to reestablish the causal relationship between the Piedmont Hospital nurses' actions or inactions and Mr. Whitley's injuries, how when Dr. Williams was re-deposed, he "completely disavowed" the causation testimony in his second affidavit, and how in response to Piedmont Hospital's motion for summary judgment the Whitleys drafted and submitted a third affidavit for Dr. Williams' signature that was "largely a recapitulation of the testimony" in his earlier affidavits that he had previously "disavowed in his depositions." The order states the court found evidence that the Whitleys improperly manipulated Dr. Williams' testimony, and that the Whitleys "drafted and submitted affidavits signed by Dr. Williams containing testimony which their counsel

knew or should have known was false and was contrary to sworn testimony" in Dr. Williams' depositions.

The trial court further found that the Whitleys made "false representations" to the court to obtain an extension of time in which to respond to Piedmont Hospital's motion for summary judgment, and that counsel made false representations to the court about his intention to obtain additional expert testimony. "Thus, it appears that [the Whitleys] deliberately misled the court in order to gain an advantage and obtain additional expert testimony." The court thus found that this conduct constituted an abuse of the civil litigation process that justified the severe sanction of dismissal with prejudice of the Whitleys' claims against Dr. Justicz and Peachtree Cardiovascular & Thoracic Surgeons.

Dr. Justicz and Peachtree Cardiovascular & Thoracic Surgeons assert that the dismissal was authorized because a trial court is granted authority under OCGA § 15-6-9 (8) to "exercise all . . . powers necessarily appertaining to their jurisdiction or which may be granted them by law," and these powers are broad and comprehensive. *Johnson v. State*, 177 Ga. 881, 882 (171 SE 699) (1933).

Nevertheless, neither the parties nor the trial court has cited any specific authority granting a trial court the power to dismiss a plaintiff's claims on this basis and we are aware of none. The cases cited to our attention by Dr. Justicz and Peachtree Cardiovascular & Thoracic Surgeons are not helpful. *Gropper v. STO Corp.*, 276 Ga. App. 272 (623 SE2d 175) (2005), concerned a dismissal pursuant to the trial court's right to control discovery, and *Ga. Receivables v. Williams*, 218 Ga. App. 313 (461 SE2d 280) (1995), concerned a dismissal based upon the expiration of the statute of limitation. Additionally, their reliance on OCGA § 9-11-37 (b) is also misplaced because the trial court did not dismiss the complaint as a discovery sanction.

Although Dr. Justicz and Peachtree Cardiovascular & Thoracic Surgeons argue that the Whitleys had notice and the opportunity to respond, this argument relies upon the Whitleys' knowledge of the ongoing dispute regarding Dr. Williams' depositions and affidavits. The record does not show that knowledge of that dispute extended to knowledge that the trial court was contemplating dismissal of their claims for the reasons stated in the trial court's order. No motion seeking that relief was before the court, and, because the trial court granted the motion sua sponte, clearly no party requested this relief.

Thus, as nothing in the record before, or during, the hearing on the motions for summary judgment shows that the Whitleys were given notice that the trial court intended to dismiss their claims for this reason and as our law does not authorize a dismissal on this

basis, we must reverse the dismissal of the Whitley's claims against Dr. Justicz and Peachtree Cardiovascular & Thoracic Surgeons.

4. Because we have reversed the grants of summary judgment to all defendants, the denial of the motions to recuse the trial court judge is moot.

### Case No. A06A1776

Although Dr. Williams provided the Whitleys' OCGA § 9-11-9.1 affidavit, his deposition testimony contradicted that affidavit and was favorable to the defendants on whether the standard of care was violated. As stated in detail above, after the deposition he gave an affidavit which contradicted his deposition testimony. He was deposed again, and his deposition testimony again contradicted his affidavit. Subsequently, Dr. Williams gave another affidavit which contradicted his testimony in both depositions.

Although the trial court said nothing at the hearing on the summary judgment motion expressing his intention to do so, the order granting summary judgment to all defendants also stated that

> Dr. Larry Williams SHALL NOT APPEAR in any capacity as an expert witness in any matter assigned to this Division, the YY Division of the State Court of Fulton County. If Dr. Williams violates the instant ORDER by so appearing, the matter in which he appears shall be summarily dismissed with prejudice and Dr. Williams shall be subject to the contempt powers of this Court.

Dr. Williams contends the trial court acted without authority and erred by banning his future testimony and subjecting him to contempt without notice and the right to be heard. He contends that the trial court denied him due process of law by proceeding in this manner. Piedmont Hospital, Cardiac Disease Specialists, P.C., and Dr. Jacobs contend that the trial court should be affirmed because Georgia courts have inherent power to punish for contempt and to compel obedience to their orders.

Pretermitting whether a court has the inherent authority to issue an order such as this as a sanction, see OCGA § 15-1-3, our law requires that the court must first afford Dr. Williams, a nonparty, notice and the opportunity to be heard before imposing such a sanction. *BEA Systems v. WebMethods, Inc.*, 265 Ga. App. 503, 509 (2) (595 SE2d 87) (2004). The record shows, however, that Dr. Williams was not given such notice and opportunity to be heard before or at the hearing, and Piedmont Hospital's brief states that after the hearing

the trial judge directed its counsel to include the provision banning Dr. Williams from testifying in his division of the state court.

Dr. Jacobs and Cardiac Disease Specialists argue that the trial court has inherent power under OCGA § 15-1-3 (3) to punish for contempt to compel obedience with its orders. Piedmont Hospital incorporates Dr. Jacobs' arguments and also asserts in its brief that the trial court's actions were "imminently justified." The record does not show, however, that the trial court found Dr. Williams to be in contempt of court. The order only recites that "the court having found that such testimony under oath by Dr. Williams has been conflicting, lacking in credibility and apparently untruthful, it is hereby" ordered that Dr. Williams shall not appear as an expert witness in that division of the State Court of Fulton County.

Additionally, the record does not show that Dr. Williams disobeyed any order of the court, and, even assuming that such an order existed, nothing shows that Dr. Williams had actual notice of it. See *In re Orenstein*, 265 Ga. App. 230, 232 (593 SE2d 690) (2004). Therefore, we find no merit to the appellees' arguments.

Accordingly, the grant of summary judgments to all defendants and the sanction imposed upon Dr. Williams is hereby reversed and the case is remanded for further proceedings.

*Judgments reversed and case remanded. Andrews, P. J., and Bernes, J., concur.*

DECIDED MARCH 29, 2007 — 

*James W. Howard*, for appellant (case no. A06A1775).

*Garland, Samuel & Loeb, Edward T. Garland, Robin N. Loeb, Anne H. Coolidge-Kaplan*, for appellant (case no. A06A1776).

*Huff, Powell & Bailey, Randolph P. Powell, Jr., Downey & Cleveland, Russell B. Davis, Min Jung Koo, Hall, Booth, Smith & Slover, Timothy H. Bendin*, for appellees.