A00A2163. GUNTER v. PATTERSON BANK.
(544 SE2d 735)

MIKELL, Judge.
Carolyn Gunter appeals the grant of summary judgment to the Patterson Bank in this premises liability action. We reverse.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. Moreover, we are reminded by the Supreme Court that the routine issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety

are generally not susceptible of summary adjudication, and summary judgment is granted only when the evidence is plain, palpable, and undisputed.[1]

On appeal from the trial court's grant of summary judgment, we conduct a de novo review to determine if the evidence demonstrates any genuine issue of material fact.[2]

Viewed in the light most favorable to the nonmovant, the evidence shows that on February 5, 1996, at approximately 9:10 a.m., Gunter fell on a mat at the entrance to the Patterson Bank (the "Bank") and injured herself. Gunter was the chief bookkeeper for the Pierce County Board of Education, and in that capacity, she was responsible for making bank deposits. Since her employer rotated its account among three banks in the county every two years, Gunter had previously traversed the entrance at the bank. When she fell, however, this was the first time she had used the entranceway, instead of the drive-through window, since her employer had returned its account to the Bank a little over a month earlier.

On the day that she fell, Gunter deposed that the temperature was 25°F or 26°F, but there was no ice on the roads. Since it had rained the night before, however, the streets were wet. Gunter parked in a parking space directly across from the bank. The parking lot was wet, but Gunter did not notice any ice.

Gunter, who was wearing rubber-soled shoes with a half-inch heel, walked on the sidewalk that was parallel to the front of the bank. When she reached the front door, which was on her right side, she put her hand on the handle and stepped on the mat in front of the door with her right foot. She was not looking at the mat as she reached for the door handle. The mat slipped forward before she could step on it with her left foot, and she fell onto the concrete, injuring her left knee.

After she fell, Gunter noticed water in the little holes in the mat. She also noticed that there was a black and greenish slimy substance on her hand and sweater. She did not know if anyone in the bank saw her fall, but she assumed that they heard her yell because they rushed to help her up. After her fall, Gunter recalled that a female employee picked up the mat and swept away the water that was standing underneath it. Gunter did not recall if the mat had been there the last time she traversed the entrance.

Victoria Kelly, a Bank employee, stated in her affidavit that the mat had been in the same place for at least five years before Gunter

---

[1] (Citations and punctuation omitted.) *Ingles Markets v. Martin*, 236 Ga. App. 810 (513 SE2d 536) (1999).

[2] *Shepard v. Winn Dixie Stores*, 241 Ga. App. 746, 747 (527 SE2d 36) (1999).

fell. Furthermore, Kelly, wearing dress pumps with at least a one-inch heel, had traversed the mat earlier that morning. She had not noticed a slimy, slippery or icy substance on the mat.

Linda Peacock, a former employee of the Bank, deposed that customers could not enter the bank without stepping on the mat.[3] Peacock also said that green stuff grew on the walkway and may have been on the mat that morning. She deposed that she rarely used the front entrance because it could be slippery and she was afraid to fall. Peacock recalled that more than two weeks before Gunter's fall, the janitor had been told to clean the algae with bleach. In his affidavit, the janitor, Joey Carter, indicated that the holes in the mat held water when it rained and that algae grew on the sidewalk and entranceway. He recalled that he had talked to a Bank employee about cleaning the front entrance because of the algae.

The Bank president, D. D. Thomas, deposed that he was responsible for overseeing the maintenance at the bank, but Carter would have been the person responsible for cleaning the mat. Thomas was not aware of any employees or customers slipping at the entrance before Gunter's fall. He deposed that most of the Bank's employees used the back entrance. When asked during his deposition if there was ever a problem with mold growing on the entrance, Thomas replied, "Oh, yes." Thomas later explained that the entrance became discolored on occasion because of dampness due to the nature of the stone, but the entrance was not slippery. Also, Thomas opined that since the mat was on a sloping surface, it would be difficult for water falling on the mat to become trapped in the mat's holes.

In the trial court, the Bank argued that it was entitled to summary judgment because it did not have actual or constructive knowledge of the alleged hazard, and actions or conditions within its control did not cause Gunter's fall. The court agreed. On appeal, Gunter contends that the trial court erred because genuine issues of fact exist as to the Bank's negligence. We agree.

> An owner or occupier of land is liable to invitees for injuries caused by his failure to exercise ordinary care in keeping his premises and approaches safe. This duty of ordinary care requires the owner to protect the invitee from unreasonable risks of harm of which the owner has superior knowledge and to inspect the premises to discover possible dangerous conditions of which the owner does not have actual knowledge. To recover for injuries sustained in a slip-and-fall action, therefore, the invitee must prove (1) that the owner

---

[3] Peacock was terminated for advancing new money against old notes.

had actual or constructive knowledge of the hazard, and (2) that the plaintiff lacked knowledge of the hazard, despite the exercise of ordinary care, due to actions or conditions within the control of the owner.[4]

"A plaintiff who alleges she slipped on a foreign substance must present some evidence of a foreign substance on the ground where she slipped."[5] Gunter's deposition testimony that there was a slimy substance on the mat, which she felt on her hands and saw on her clothes after she fell, is not disputed. Thus, it "is sufficient to create a genuine issue of material fact regarding the presence of a foreign substance on the floor where she fell."[6]

The issue of whether the Bank had actual or constructive knowledge of this substance is disputed. While the evidence does not demonstrate that the Bank had actual knowledge of the substance, it does preclude us from holding as a matter of law that the Bank did not have constructive knowledge of the substance. Based on the deposition testimony of the Bank president, it appears that Carter was the person who maintained the mat and the entranceway. In his affidavit, Carter stated that the holes in the mat held water and that algae grew on the bank's sidewalk and entranceway. These averments are consistent with Gunter's observations. Peacock also testified that "green stuff" grew on the walkway to the bank. The deposition testimony of Gunter and Peacock, along with Carter's affidavit, create a genuine issue of fact as to the Bank's constructive knowledge of the substance.

The Bank argues that the foreign substance had not been on the mat long enough for the Bank to discover its presence. In support of this argument, the Bank relies on employee Kelly's affidavit. Kelly stated that she did not notice anything slimy, slippery or icy when she traversed the same area where Gunter fell shortly before the Bank opened for business that day.

Though we recognize the conflict in the evidence, "for purposes of summary judgment we do not look to the conflicts in the evidence but instead to whether plaintiff's evidence presents a prima facie case which would authorize a jury to resolve the issues of fact in her favor."[7] Furthermore, we have held that "in order to withstand a motion for summary judgment, a plaintiff need not show how long a substance has been on the floor unless the defendant has established

---

[4] (Citations omitted.) *Kauffman v. Eastern Food &c.*, 246 Ga. App. 103, 104 (2) (539 SE2d 599) (2000).

[5] *Hutchins v. J. H. Harvey Co.*, 240 Ga. App. 582, 584 (1) (524 SE2d 289) (1999).

[6] Id.

[7] (Citation omitted.) *Davis v. Piedmont Hosp.*, 222 Ga. App. 97, 98 (473 SE2d 531) (1996).

that reasonable inspection procedures were in place and followed at the time of the incident."[8] In this case, there is no evidence that the Bank utilized an inspection procedure which could have revealed the substance's presence. "Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure."[9]

The Bank attempts to discredit Carter's and Peacock's statements because they are former Bank employees. In its brief, the Bank references Peacock's prior misdemeanor conviction and requests that we consider her credibility when evaluating the veracity of her statement. It is not our role on appeal to assess Carter's or Peacock's credibility. Determining the credibility of a witness is exclusively within the province of the jury, and any evidence of a witness' interest or bias toward his employer is for jury consideration.[10]

In light of our finding that a jury issue remains regarding the Bank's constructive knowledge, we need not consider Gunter's efforts to invoke the distraction doctrine to preclude summary judgment. We note, however, that the Supreme Court has held that when an invitee explains that she was not looking at the hazard because of a distraction within the owner's control, such as the premises configuration, the invitee has presented some evidence that she exercised reasonable care for her safety.[11] In that case, the factfinder shall determine if the invitee's injury was caused by the owner's negligence and whether the invitee exercised reasonable care for her own safety.[12]

The Supreme Court has also disapproved the line of cases holding that as a matter of law an invitee's failure to observe the hazard which caused the fall, before falling, constitutes a failure to exercise ordinary care.[13] Thus, Gunter's admission that she did not look at the mat before she fell is not determinative. The pertinent question before us is whether there is evidence that the Bank had actual or constructive knowledge of the foreign substance. We find that there is evidence in the record from which a jury could determine that the Bank had constructive knowledge of the substance. Accordingly, we reverse the trial court's grant of summary judgment.

*Judgment reversed. Pope, P. J., and Miller, J., concur.*

DECIDED JANUARY 16, 2001.

*Fred R. Kopp,* for appellant.

---

[8] *Martin,* supra at 811.
[9] *Hutchins,* supra at 585.
[10] *McNeely v. Wal-Mart Stores,* 246 Ga. App. 852 (542 SE2d 575) (2000).
[11] *Robinson v. Kroger Co.,* 268 Ga. 735, 746 (2) (a) (493 SE2d 403) (1997).
[12] Id.
[13] Id. at 743 (1).

*Fendig, McLemore, Taylor, Whitworth & Durham, Philip R. Taylor, Beth M. Duncan,* for appellee.