A07A0982. PINCKNEY et al. v. THE COVINGTON ATHLETIC CLUB AND FITNESS CENTER.

(655 SE2d 650)

SMITH, Presiding Judge.

In this slip and fall case, Connie and Terry Pinckney appeal from the trial court's grant of summary judgment to The Covington Athletic Club and Fitness Center ("Covington Athletic"). Because there is no genuine issue of material fact as to the existence of a defect and as to whether any such defect could have caused Connie Pinckney to fall, we affirm.

Summary judgment is proper when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). So viewed, the record shows that Mrs. Pinckney fell at Covington Athletic as she stepped out of the swimming pool during a swim lesson. Pinckney testified in her deposition that "[a]s I was walking up the steps holding on the rail with my left hand, as soon as I put my right foot down on the deck to come up and stand on the last thing, it slipped." Pinckney also testified in her deposition that on the day of her fall, she had no idea what made her fall, she saw nothing that could explain her fall, there was no substance on her foot after her fall, and she saw no "slime" on the day of her fall.

The accident report signed by Pinckney after her fall stated that the cause of the accident was "slipping on wet deck." In her deposition, Pinckney acknowledged that the area where she fell was "sort of" wet. A Covington Athletic employee inspected the area after Pinckney's fall and saw nothing other than water to explain her fall.

The day after Pinckney's fall, Covington Athletic closed and drained the pool for replastering. When the pool reopened 12 days after Pinckney's fall, she went back to the pool "because [she] was just wondering what was going on and why, how did I fall." At that time, she "noticed that there was . . . a little slime, greenish looking stuff that was along this line." She then "assumed" that the slime was what

caused her to fall 12 days earlier. Pinckney took a photograph of the area where she fell and testified that "a little" of the slime she observed was in the same place she placed her foot before her fall. The employee who inspected the area the day of Pinckney's fall averred that he saw no algae or slime in the area of her fall at that time.

Based on this evidence, Covington Athletic moved for summary judgment and asserted that no genuine issue existed as to whether a defect was present at the time Pinckney fell and as to whether any such defect could have caused her fall. In response to the motion for summary judgment, Pinckney submitted an affidavit in which she claimed for the first time that *before her fall,* she "could feel that the wetness was not merely soaked with water but it had an abnormally slippery wet film, such as slime. I did not expect this." The trial court applied the rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986), to this new testimony and granted summary judgment in favor of Covington Athletic.

On appeal, Pinckney argues the trial court erred by applying the rule in *Prophecy*, supra, because her affidavit does not contradict her deposition testimony and because she provided a reasonable explanation for her "additional testimony." We disagree.

Pinckney's affidavit clearly contradicts her earlier testimony that she "had no idea what made her fall," and just "assumed" that it was algae based on what she saw 12 days later. Unless she offers a "reasonable explanation" for this contradiction, the statement in her affidavit cannot be considered. *Prophecy*, supra. "The burden rests upon the party giving the contradictory testimony to offer a reasonable explanation, and whether this has been done is an issue of law for the trial judge." (Citations omitted.) Id.

Here, Pinckney attempts to explain the inconsistency by claiming that she "never had the opportunity to explain this fully when [her] deposition was taken." But the multiple questions posed in her deposition provided Pinckney ample opportunity to explain what she observed before she fell, including any "slime" or abnormal slipperiness. Additionally, the transcript of Pinckney's deposition shows that although she reserved the right to read and sign her deposition, she did not make any changes or additions to her testimony on the errata sheet provided to her by the court reporter as permitted by OCGA § 9-11-30 (e). See *J. H. Harvey Co. v. Reddick*, 240 Ga. App. 466, 473 (2) (522 SE2d 749) (1999) (changes to form or substance expressly contemplated by OCGA § 9-11-30 (e)). Because Pinckney had an opportunity to explain fully her testimony both in her deposition and on the deposition errata sheet provided by the court reporter but failed to do so, this court concludes that her explanation, that she had no such opportunity, is unreasonable.

When Pinckney's contradictory averments in her affidavit are removed from consideration, the remaining evidence — Pinckney's claim that she slipped on a wet pool deck while climbing out of the pool — fails to create a genuine issue. The standing water in plain view on the pool deck was a hazard "any person with ordinary, common sense would recognize as something that might cause a person to trip, slip, or fall." (Citation and footnote omitted.) *Music v. Steamco, Inc.*, 265 Ga. App. 185, 186 (593 SE2d 370) (2004); see also *Brownlow v. Six Flags Over Ga.*, 172 Ga. App. 242, 243-244 (322 SE2d 548) (1984) (appellant failed to exercise ordinary care for her own safety where she was aware of wet conditions caused by patrons exiting a water ride).

A photograph taken 12 days after Pinckney's fall does not create a genuine issue about the existence of algae at the time she fell, particularly when the pool had been closed for repairs during the intervening period. The employee who inspected the area after Pinckney's fall saw nothing other than water to explain her fall, and this evidence is consistent with Pinckney's deposition testimony that she had no idea what caused her to fall and saw nothing that could have explained her fall.

"The threshold point of inquiry in a slip and fall case is the existence of a hazardous condition on the premises. Proof of a fall, without more, does not create liability on the part of a proprietor or landowner. It is common knowledge that people fall on the best of sidewalks and floors." (Citations and punctuation omitted.) *Flagstar Enterprises v. Burch*, 267 Ga. App. 856, 856-857 (600 SE2d 834) (2004). Additionally,

> [c]ausation is always an essential element in slip or trip and fall cases. Where the plaintiff does not know of a cause or cannot prove the cause, there can be no recovery because an essential element of negligence cannot be proven. A mere possibility of causation is not enough and when the matter remains one of pure speculation or conjecture . . . , it is appropriate for the court to grant summary judgment to the defendant.

(Citations and footnotes omitted.) *Pennington v. WJL, Inc.*, 263 Ga. App. 758, 760 (1) (589 SE2d 259) (2003).

This is a case in which only speculation and conjecture support the conclusion that algae was actually present at the time of Pinckney's fall. Moreover, even if we were to assume a genuine issue with regard to the existence of a hazard, speculation and conjecture are also the only support for the conclusion that algae caused Pinckney to fall. See *Pennington*, supra, 263 Ga. App. at 761 (2) (summary

judgment granted to defendant because only causation evidence was presence of hoses at scene and "speculation after the fact" that plaintiff must have tripped over hoses); *Moore v. Teague,* 255 Ga. App. 220 (564 SE2d 817) (2002) (affirming grant of summary judgment to defendant where plaintiff "assumed" she slipped on wet floor, but testified that she did not know if floor was actually wet and did not know why she slipped); *Shadburn v. Whitlow,* 243 Ga. App. 555 (533 SE2d 765) (2000) (defendant entitled to summary judgment where witnesses "believed" woman fell on loose carpeting at top of stairwell, but also admitted that they were not certain what caused fall).

Because the evidence fails to create a genuine issue with regard to both the existence of algae at the time of Pinckney's fall and whether any such defect could have caused her fall, the trial court properly granted summary judgment in favor of Covington Athletic.

*Judgment affirmed. Andrews, P. J., Johnson, P. J., Ellington and Adams, JJ., concur. Barnes, C. J., and Miller, J., dissent.*

BARNES, Chief Judge, dissenting.

Because I believe material issues of fact remain as to Covington's liability, I must respectfully dissent. " '[R]outine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and . . . summary judgment is granted only when the evidence is plain, palpable, and undisputed." *Robinson v. Kroger Co.,* 268 Ga. 735, 749 (2) (b) (493 SE2d 403) (1997). This principle was recently reaffirmed by our Supreme Court in *Dickerson v. Guest Svcs. Co. of Virginia,* 282 Ga. 771 (653 SE2d 699) (2007). In *Dickerson,* the Court emphasized that with *Robinson* "this Court sought to correct an observed tendency to grant summary judgment as a matter of course to defendants in premises liability cases." Id.

In a premises liability action against an owner,

[a]n owner or occupier of land is liable to invitees for injuries caused by his failure to exercise ordinary care in keeping his premises and approaches safe. This duty of ordinary care requires the owner to protect the invitee from unreasonable risks of harm of which the owner has superior knowledge and to inspect the premises to discover possible dangerous conditions of which the owner does not have actual knowledge.

*Gunter v. Patterson Bank,* 247 Ga. App. 555, 557-558 (544 SE2d 735) (2001). While the presence of water around the coping of a swimming

pool is not an unreasonable hazard, slipperiness exceeding that expected by invitees using the pool is a hazard that must be contemplated by the owner.

Because there is no evidence that Covington had actual knowledge of the hazard that caused Pinckney's fall, she must show that the facility had constructive knowledge of the hazard. To do so, Pinckney must show that (1) a Covington employee could have easily seen the substance that caused the fall or (2) ordinary diligence by Covington should have discovered it. *Brown v. Piggly Wiggly Southern*, 228 Ga. App. 629, 631 (3) (b) (493 SE2d 196) (1997).

Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident. *Avery v. Cleveland Avenue Motel*, 239 Ga. App. 644, 645-646 (2) (521 SE2d 668) (1999). Circumstantial evidence that raises a reasonable inference of the cause of the fall, unrebutted by positive evidence, is sufficient to survive summary judgment. *Shepherd v. Holmes*, 184 Ga. App. 648, 649 (2) (362 SE2d 396) (1987).

Here, Pinckney testified that she slipped, went back 12 days later to take pictures, and then saw "a little slime, greenish looking stuff" in the pictures. In her affidavit, which was submitted after the summary judgment motion, she was more specific about the cause of her fall, and averred that when she exited the pool and put her foot down she "could feel that the wetness was not merely soaked with water but it had an abnormally slippery wet film, such as slime." Contrary to the majority's view, there is nothing in this statement that contradicts Pinckney's earlier testimony that she did not know what caused her fall. Moreover, "under *Prophecy Corp.*, the opposing party is not entitled to judgment in its favor where there is evidence other than the favorable portion of the equivocator's self-contradictory testimony that supports the equivocator's position." *Korey v. Bell-South Telecommunications*, 269 Ga. 108, 109 (498 SE2d 519) (1998).

Pinckney's expert, an engineer and certified safety professional, testified that he evaluated the pool's safety inspection record conducted the month before the accident, and the inspection revealed that the water was "a bit cloudy," and the chlorine level was deficient. The chlorine readings recorded by Covington's personnel showed chlorine levels of "0" and ".5" in the days preceding Pinckney's fall. The expert testified that the recommended chlorine level would be "somewhere around 2, two and a half to 3 or to 4 parts per million available, free available chlorine."

He also found that Covington's facility manager did not have a program to maintain the pool properly. The manager used Clorox spray and a wash down to kill the algae on the coping around the pool. The expert testified that "Clorox spray is very mild. It's usually like less than 6 percent. If there's algae, slippery algae on the coping, he would have to scrub it down with a wire brush to get to the roots of the algae and apply an algaecide to it to kill it." The expert also indicated that Covington failed to superchlorinate the pool before it was opened, and that the failure to do so would create an algae problem. He further indicated that the coping is required to have a certain coefficient of friction during wetness, or more specifically, a degree of slip resistance of from 0.5 (OSHA) or 0.6 (ADA). He testified that, although he could not measure the coefficient of the coping, logic dictates that "if someone slips and falls and they slip and fall on a surface that's dirty as this is, whether it's water, whether it's algae — it appears to be algae — the coefficient of friction is very low."

Covington's pool maintenance man testified that because Covington was under new management there were no formal written pool maintenance procedures. He further testified that if there were problems with the pool he would call Conyers Pool, the supplier of the pool chemicals. When asked about any evidence of algae in the pool, he testified that "it's occasional[ly] in the cracks. . . . Now that we are an indoor pool, which you have air conditioning, heating and dehumidifying to keep all the moisture out, you know, algae doesn't form in cracks." The maintenance man testified that to protect the coping and surface area he would apply bleach to the area twice a week. He testified that he utilized this procedure because "I used to paint houses, and we pressure-washed. And Clorox pretty much cleans anything." He later averred that on the evening of the fall he inspected the spot where Pinckney fell and there "was no algae, slime or any other such material in the area of the fall except pool water."

Based on this evidence, I cannot agree that, as a matter of law, Covington's inspection procedures were reasonable under the circumstances. The maintenance man testified that before the facility was renovated and an air conditioner and dehumidifier were added, the humidity present in the pool area could cause algae to form in the cracks. He also testified that one could not merely visibly ascertain the presence of algae, *"you've got to rub your fingers across it and feel it."* Thus, although he visually inspected the area where Pinckney fell, there is no evidence that he did more than a cursory visual inspection and did "rub [his] fingers across it and feel it" to ascertain the presence of algae or a slimy substance. He also stated that there was no formal procedure for maintenance or inspection, and that he would spray the deck around the pool twice a week with bleach.

The expert testified that Clorox is too mild to kill algae and that to kill algae on the coping, one would need to scrub it down with a wire brush to get to the roots of the algae and apply an algaecide to it to kill it. While the trial court commented on the fact that the expert had not inspected the pool or tested anything, it was impossible for him to test the pool as it existed on the day of Pinckney's fall, as the pool underwent extensive renovations shortly after the incident. Thus, the fact that the expert could not inspect the pool to ascertain whether the conditions existing at the time of the fall were favorable for the presence of algae can hardly be surprising.

Further, the trial court is not authorized to judge the credibility of Pinckney's expert as that is a function reserved for the jury. *Whitley v. Piedmont Hosp.*, 284 Ga. App. 649, 654 (1) (644 SE2d 514) (2007). Therefore, at the least a jury issue is presented as to the effectiveness of Covington's inspection procedures as it relates to the prevention of algae formation on the pool coping.

This case is entirely different from the myriad of slip and fall cases involving rain water or spills. See *Walker v. Sears Roebuck & Co.*, 278 Ga. App. 677 (629 SE2d 561) (2006); *Emory Univ. v. Smith*, 260 Ga. App. 900 (581 SE2d 405) (2003); *Cohen v. Target Corp.*, 256 Ga. App. 91 (567 SE2d 733) (2002); *Mansell v. Starr Enterprises/Texaco*, 256 Ga. App. 257, 258-259 (568 SE2d 145) (2002); *Veazy v. F. W. Woolworth Co.*, 191 Ga. App. 601 (382 SE2d 411) (1989); *Gibson v. Consolidated Credit Corp.*, 110 Ga. App. 170 (138 SE2d 77) (1964). Here, it is expected that the area around a pool will accumulate water causing some degree of hazard. This hazard is contemplated by the invitee and owner who through the use of certain materials mitigates the hazard as much as possible. Any additional hazard created by the presence of a foreign material like algae or slime is not contemplated by the invitee, but is and should be anticipated by the owner. That being so, the presence or lack thereof of inspection and maintenance procedure is especially critical in these cases. Covington was certainly in the position to have superior knowledge of the potential for algae or slime buildup that might expose its invitees to an "unreasonable risk[ ] of harm." *Gunter v. Patterson Bank*, supra, 247 Ga. App. at 558.

While indeed speculation cannot establish causation, see *Avery v. Cleveland Avenue Motel*, 239 Ga. App. 644, 645 (1) (521 SE2d 668) (1999), Dean was only required to point to evidence creating a triable issue. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Under these facts, Covington was not entitled to summary judgment on the issue of whether there was algae present the day of Pinckney's fall. Since the majority reaches a different conclusion, I respectfully dissent.

I am authorized to state that Judge Miller joins in this dissent.

898

*Thurston J. Lopes,* for appellants.
*Webb, Zschunke, Neary & Dikeman, Dennis J. Webb, Jeffrey S. Kowalski,* for appellee.