A10A0784. RAPP et al. v. ESCANTE, INC.

(695 SE2d 744)

PHIPPS, Presiding Judge.

Escante, Inc. sued Steven Rapp and Parcon Investments, LLC, to set aside an allegedly fraudulent transfer of real property. Finding that the transfer was fraudulent, the trial court granted summary judgment to Escante. Rapp and Parcon Investments appeal. We affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

Escante supplied products to Lingerie Mart Corporation but did not receive payment. In November 2007, Escante sued Lingerie Mart and Rapp (as Lingerie Mart's guarantor). On May 15, 2008, Escante obtained a judgment against Lingerie Mart and Rapp for $125,788 in principal and pre-judgment interest, plus attorney fees, court costs,

---

[1] OCGA § 9-11-56 (c).

[2] *Rolleston v. Cherry*, 237 Ga. App. 733, 734 (1) (521 SE2d 1) (1999).

and post-judgment interest. Lingerie Mart and Rapp made no payments on the judgment.

During post-judgment discovery, Escante learned that in March 2008 Rapp had transferred to Parcon Investments commercial real estate valued at between $850,000 and $1,000,000, and had received no money for the conveyance.[3] After the transfer, Rapp continued to operate Lingerie Mart on the premises of the transferred property.

Parcon Investments was a single-member limited liability company formed in 2007, and Rapp was Parcon Investment's sole member. According to Rapp, he made the transfer intending "to create a favorable tax environment" for himself. When asked why Parcon Investments existed, Rapp replied that it "exists on paper. It is also a company that owns certain real estate." Rapp added that, other than the real property at issue, Parcon Investments owned no property or assets, and it did not generate any income.

On November 25, 2008, Escante brought this action alleging that Rapp had transferred the property to Parcon Investments in a fraudulent attempt to defeat Escante's right to collect an imminent judgment, in violation of OCGA §§ 18-2-74 and 18-2-75. Escante subsequently moved for summary judgment. The trial court granted Escante's motion pursuant to OCGA § 18-2-75 (a), finding that the transfer — made after Escante's claim arose, for no compensation, and when Rapp was insolvent — was fraudulent.

1. Rapp and Parcon Investments contend the trial court erred in finding that Rapp was insolvent at the time of the transfer. This argument presents no basis for reversal.

OCGA § 18-2-75 (a) states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

A debtor who generally is not paying his debts as they become due is presumed to be insolvent.[4]

Here, there was evidence that Rapp was insolvent at the time of the transfer, and also as a result of the transfer or conveyance.

---

[3] According to Rapp, he purchased the property for $1 million in 2004, and the property was valued at $850,000 in October 2008.

[4] OCGA § 18-2-72 (b).

Rapp failed to pay Escante for merchandise Lingerie Mart received (which debt he had personally guaranteed), and Escante filed suit in November 2007 to recover payment. Further, Rapp failed to pay 2007 taxes due the State of Georgia and Forsyth County on the transferred property, and notice was given in 2009 that the property would be sold at public auction. Rapp also had a $901,000 balloon mortgage payment due on the real property in January 2008, which he did not make; instead, he entered into a loan modification agreement in April 2008 and agreed to make monthly payments of $6,775 on the balloon note.

In response to this evidence of insolvency, Rapp sought to show solvency at the time of the transfer by pointing to testimony he gave in a March 2009 affidavit filed in opposition to Escante's motion for summary judgment. In the affidavit, Rapp averred that at the time of the transfer (March 2008), equity in his residence exceeded $200,000; he had "other assets including cash in the bank"; and he retained his ownership interest in Lingerie Mart, which had inventory valued at $173,568 and sales exceeding $1.5 million in 2007.

Rapp's affidavit testimony contrasted sharply with testimony he gave on deposition in October 2008 concerning his finances. In the deposition, Rapp testified that as of October 2008 he owned four vehicles valued at a total of $9,000, owned no other personal assets worth more than $5,000, had equity in his personal residence of approximately $25,000 to $35,000, and had no interest in any other real property. Rapp deposed that Lingerie Mart's inventory was valued at $25,000, and that Lingerie Mart had $300 in the bank and furniture and office supplies valued at $5,000. He added that Lingerie Mart's three other bank accounts had zero or negative balances. Rapp deposed that he had received $25,000 in profits from Lingerie Mart in 2008 and that he participated in no other business ventures and had no other means of earning income. Rapp deposed that he maintained one personal checking account, which had a balance at that time of $88.

In attempting to explain the conflicts between his affidavit testimony and his deposition testimony, Rapp stated that his deposition testimony addressed his financial affairs as of the date of the deposition (October 2008), but that the affidavit testimony addressed his affairs as of the date of the transfer (March 2008), and that the value of the assets declined during that period due "to the downturn in the economy."

"[O]n motion for summary judgment, when a respondent offers self-contradictory testimony by the party-witness on an issue dispositive of the case, if the contradiction is not adequately explained, the contradictory testimony must be construed against the respon-

dent."[5] Even where testimony is contradictory, however, if a reasonable explanation is offered for the contradiction, the testimony will not be construed against the party-witness.[6] "The burden rests upon the party giving the contradictory testimony to offer a reasonable explanation, and whether this has been done is an issue of law for the trial judge."[7]

First, even if we accept Rapp's argument that he did not contradict himself regarding his solvency at the time of the transfer or, alternatively, we find that he did contradict himself but gave a reasonable explanation for the contradictions, the evidence nonetheless showed that he became insolvent as a result of the transfer. Rapp testified that he owned valuable real property and other assets before the transfer but, within months after he gave away the property at issue, he did not have sufficient assets to satisfy his debts. Thus, the trial court was authorized to find insolvency on this basis.[8]

Second, the trial court was authorized to find that Escante was entitled to judgment as a matter of law based on Rapp's insolvency at the time of the transfer. Rapp's deposition testimony contradicted his later, self-serving affidavit testimony regarding the equity in his residence, the value of Lingerie Mart's inventory, and the value of his other assets. Although Rapp later attempted to explain the contradictions by stating that the figures concerned different time periods, the trial court determined that Rapp's explanation for the contradictions was not reasonable and did not create a triable issue of fact.[9] This finding was authorized by the record. Only seven months elapsed between the transfer and the deposition, and the record contains no evidence to document Rapp's belated claim that the value of his assets declined so significantly during that brief period.[10] We note that the unauthenticated financial records of Lingerie Mart attached to Rapp's deposition transcript were inadmissible hearsay and could not be considered as evidence for summary judgment purposes.[11] When Rapp's contradictory statements in his affidavit were removed from consideration, the remaining evidence failed to

---

[5] *Conrad v. Conrad*, 278 Ga. 107, 109 (597 SE2d 369) (2004) (citations omitted).

[6] *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986).

[7] Id.

[8] See generally *Nash v. Studdard*, 294 Ga. App. 845, 852 (1) (670 SE2d 508) (2008) (when an issue is properly before this Court, we will affirm a trial court's summary judgment decision if it is right for any reason).

[9] See generally *Wall v. Century 21 Winnerville Realty*, 244 Ga. App. 762, 764, n. 2 (536 SE2d 798) (2000).

[10] See generally *Walker v. Brannan*, 243 Ga. App. 235, 237-238 (533 SE2d 129) (2000).

[11] *Henson v. Ga.-Pacific Corp.*, 289 Ga. App. 777, 780 (1) (658 SE2d 391) (2008); see *McCarter v. La Hacienda Condo. Assn.*, 255 Ga. App. 68, 69 (1) (564 SE2d 483) (2002).

create a genuine issue of material fact.[12] The trial court did not err in deciding as a matter of law that Rapp was insolvent when the property was transferred.[13]

2. Rapp and Parcon Investments contend that the trial court erred in finding that Rapp transferred the property for no consideration. Relying on Rapp's affidavit testimony, they urge that Rapp received value for the property in that Parcon Investments assumed liability for the first mortgage on the property and paid the second mortgage in full on his behalf.

Yet, when asked on deposition whether Parcon Investments paid him "any money" for the property, Rapp replied, "No." And when Rapp was specifically asked if Parcon Investments gave him "any other form of compensation for the transfer," Rapp responded, "No." Rapp knew when he gave the deposition testimony in October 2008 what, if anything, he had received from Parcon Investments when he conveyed the property seven months earlier. And, although he later made changes to his deposition testimony on the deposition errata sheet as to several of his answers, Rapp made no changes to his testimony concerning payment received from Parcon Investments. Nor did Rapp or Parcon Investments submit any documentary evidence to support the claim that Rapp received any consideration for the property.

Rapp offered no reasonable explanation for the contradiction, and the trial court properly construed the evidence against him.[14] The evidence authorized the trial court to conclude as a matter of law that Rapp did not receive a reasonably equivalent value for the transfer.[15]

*Judgment affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED MAY 28, 2010.

*Rodney L. Eason*, for appellants.
*Simon H. Bloom, Stephanie A. Everett, Keith M. Kodosky*, for appellee.

---

[12] See *Pinckney v. Covington Athletic Club &c.*, 288 Ga. App. 891, 893 (655 SE2d 650) (2007).

[13] See *Word v. Stidham*, 271 Ga. App. 435, 436-437 (609 SE2d 651) (2004).

[14] See *Nghiem v. Allstate Ins. Co.*, 292 Ga. App. 588, 591 (664 SE2d 925) (2008); *Pinckney*, supra at 892.

[15] See generally *Kent v. A. O. White, Jr. &c., Inc.*, 279 Ga. App. 563, 565 (2) (631 SE2d 782) (2006).