**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 27, 2020**

# In the Court of Appeals of Georgia

A20A0649.  WILLIAMS  INVESTMENT  COMPANY  v.
GIRARDOT.

PHIPPS, Senior Appellate Judge.

Appellee Yulonda Girardot filed suit against appellant Williams Investment Company d/b/a Days Inn ("the hotel") to recover damages that she allegedly sustained when she slipped and fell on a wet sidewalk at appellant's hotel. The hotel filed a motion for summary judgment, which the trial court denied. We granted the hotel's application for interlocutory appeal to review the trial court's decision. On appeal, the hotel contends that the trial court erred in denying summary judgment in its favor because the undisputed evidence established that Girardot (1) had equal, or superior, knowledge of the alleged hazardous condition and (2) assumed the risk associated with the alleged hazard. We agree with the hotel and reverse.

> Summary judgment is proper when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Pinckney v. Covington Athletic Club & Fitness Ctr.*, 288 Ga. App. 891, 891 (655 SE2d 650) (2007).

So viewed, the record shows that on July 1, 2016, Girardot and her four grandchildren were guests at the hotel that appellant owned and operated. Girardot's hotel room was located in close proximity to the hotel's pool. After dinner, at approximately 6:30 p.m., Girardot and her grandchildren went to the pool. When walking to the pool area, Girardot did not notice anything hazardous or slippery about the subject sidewalk between the hotel room and the pool.

Girardot remained at the pool for approximately an hour. At some point, Girardot left the pool area to escort her youngest grandson to the bathroom. Girardot and her grandson traversed the same route back toward the hotel room that they had taken to the pool. It was near dusk and lights illuminated the sidewalk leading from the pool area to the hotel room.

2

According to Girardot, there had been approximately six other guests at the pool, and other pool guests may have walked down the same sidewalk before her. Girardot's grandson had not dried off at the pool and had water dripping from him as he walked ahead of Girardot. Girardot described that, as she walked from the pool area, the lights illuminated the sidewalk and she saw that the sidewalk leading to the hotel room was painted, "shin[y]," and wet. Girardot also observed that a portion of the enamel on the sidewalk's surface was peeling off. Girardot further described that as the light was shining on the wet sidewalk, she could see that "it looked slick." Recognizing that the wet sidewalk area required the exercise of caution, Girardot warned her grandson to "slow down[.]"

While traversing the wet sidewalk, Girardot slipped and fell.[1] She suffered multiple injuries to the left side of her body as a result of the fall. She reported the fall incident to the hotel's front desk shortly thereafter and the hotel manager completed an incident report on the following day.

---

[1] At her deposition, Girardot identified the sidewalk where she fell in a photograph. She further clarified that there were bushes and a grassy area next to the sidewalk where she fell.

Girardot filed suit against the hotel, seeking to recover for damages that she allegedly sustained as a result of the fall incident. After deposing Girardot, the hotel filed a motion for summary judgment. In response to the motion, Girardot presented an expert affidavit from a retired OSHA trainer who opined that the hotel failed to maintain the sidewalk in a reasonably safe condition; the sidewalk surface had deteriorated paint, which significantly increased the likelihood of a pedestrian slipping when moisture was present; and that Girardot's fall was likely caused by the uneven surface material on the sidewalk. The trial court denied the hotel's motion and the instant appeal ensued.

> The owner or occupier of [a] premises is under a duty to keep its premises reasonably safe and to warn of *hidden dangers or defects not observable to invitees* who are exercising ordinary care for their own safety. However, a property owner is not an insurer of the safety of its invitees. The mere showing of the occurrence of an injury does not create a presumption of negligence.

(Citations and punctuation omitted; emphasis supplied.) *Cleghorn v. Winn Dixie Stores*, 228 Ga. App. 766, 766 (492 SE2d 745) (1997).

> [T]o recover damages for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of

4

the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier.

(Punctuation and footnote omitted.) *Weickert v. Home Depot U. S. A.*, 347 Ga. App. 889, 891 (821 SE2d 110) (2018).

A plaintiff cannot recover on a premises liability claim unless the defendant had superior knowledge of the hazard; consequently, the defendant is entitled to summary judgment if there is no evidence that it had superior knowledge or if the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant.

(Punctuation and footnote omitted.) *Diaz v. Wild Adventures, Inc.*, 289 Ga. App. 889, 891 (658 SE2d 362) (2008).

In the instant case, the hotel argues that it was entitled to summary judgment because the undisputed evidence, including Girardot's own deposition testimony, established that she had at least equal knowledge of the hazardous condition before she proceeded to walk on the sidewalk. We agree.

Significantly, at her deposition, Girardot testified that she had previously traversed the same sidewalk after she had checked into the hotel and was initially going to the hotel room. At that time, she noticed that the sidewalk's surface had

5

chipped paint, but she had no difficulty walking on the sidewalk. She further testified that when she later walked from the pool area, there were lights illuminating the sidewalk area and she saw that the painted sidewalk was "shin[y]" and appeared to be wet. Specifically, she demonstrated the path that she took around the corner from the pool and confirmed that "[she] had seen that it was wet when [she] came around [from the pool area] because . . . the lighting [was] shining on it, [and] you could see it looked slick." She confirmed that because of the lighting, the wet sidewalk was more noticeable and she could see the sidewalk area well. Girardot's appreciation of the hazard is highlighted by the fact that she warned her grandson to exercise caution as he walked ahead of her. This combined testimony established that the alleged sidewalk hazard was openly visible due to lights illuminating the sidewalk and that Girardot had observed and appreciated the sidewalk hazard before she walked upon it.[2] "She nevertheless chose to negotiate the hazard and thus assumed the risk as to

---

[2] While the evidence shows that Girardot was aware of the hazardous wet condition on the sidewalk prior to the fall, there is no evidence that the hotel had superior knowledge of the hazard. There is no evidence as to how long the sidewalk had been wet. Likewise, there is no evidence that any hotel employees had been in the immediate vicinity who could have discovered that the sidewalk was wet prior to the incident. And Girardot does not point to any evidence that the hotel had notice of prior falls on the sidewalk. Under these circumstances, Girardot has failed to show that the hotel had actual or constructive knowledge of the wet hazardous condition. See *Fulton-Dekalb Cty. Hosp. Auth. v. Estes*, 187 Ga. App. 120, 121-122 (369 SE2d

6

the known condition by voluntarily acting in the face of such knowledge." (Punctuation and footnote omitted.) *Emory Univ. v. Smith*, 260 Ga. App. 900, 902-903 (581 SE2d 405) (2003).[3]

Because Girardot's deposition testimony plainly and indisputably shows that she had at least equal knowledge of the wet, slick hazard before she voluntarily proceeded to traverse the sidewalk, the hotel was entitled to summary judgment in its favor. See *Briddle v. Cornerstone Lodge of America*, 288 Ga. App. 353, 355 (654 SE2d 188) (2007) (affirming grant of summary judgment to defendant in slip and fall action when evidence showed that plaintiff was aware of the wet floor hazard and voluntarily chose to walk across the wet surface); *Emory Univ.*, 260 Ga. App. at 902-903 (trial court erred in denying defendant's motion for summary judgment when

262) (1988) (defendant was entitled to summary judgment when there was no evidence how long the floor had been allowed to remain in a wet condition or that an employee of defendant was in the immediate vicinity to have an opportunity to discover the hazardous condition).

[3] Girardot does not assert or point to any evidence that she was constrained by circumstances to walk on the sidewalk where the hazard existed. And no such finding was made by the trial court. "Where a plaintiff is not required to traverse a route upon which a known hazard exists, but chooses to do so, she can be deemed to have voluntarily assumed the risk of injury." (Citations and emphasis omitted.) *Lea v. Am. Home Equities*, 210 Ga. App. 214, 215 (2) (435 SE2d 734) (1993).

the evidence showed that plaintiff saw the sloped, painted, and wet ramp hazard before she stepped on it, but she chose to negotiate the hazard); *Cleghorn*, 228 Ga. App. at 766-767 (property owner was entitled to summary judgment when plaintiff conceded that nothing obstructed his view of the floor hazard and made no claim that he had been distracted, but apparently decided that he could safely traverse the area by walking "very carefully").

*Judgment reversed. Barnes, P. J., and Gobeil, J., concur*.