**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

**September 29, 2022**

# In the Court of Appeals of Georgia

A22A0737. LAW et al. v. SE PROPERTY HOLDINGS, LLC.

RICKMAN, Chief Judge.

This appeal is taken from a partial grant of summary judgment to the plaintiff and judgment creditor SE Property Holdings, LLC in its action to recover fraudulently transferred property from the defendants below, including appellant Sharon Law.[1] Appellants argue that because questions of fact remain as to Mrs. Law's receipt of equivalent value for four transfers of property she made in 2010 and 2012, as well as her insolvent status at the time of the transfers, the trial court should not

---

[1] The other defendants below are Mrs. Law's husband Lewis and three entities (Tray-Law Investments, LLC, Merrill Properties, LLC, and September Properties, LLC), all of whom have their principal place of business at the Laws' residential address.

have granted SE Property partial summary judgment on its constructive fraud claim.[2] Appellants also assert that the trial court erred when it failed to grant Mrs. Law a homestead exemption. We reverse as to the first of the transfers at issue because SE Property did not carry its burden of showing that Mrs. Law was insolvent at the time the first transfer was made, and as to Mrs. Law's entitlement to a homestead exemption, but we affirm the remainder of the judgment.

Although we view the record in the light most favorable to appellants as the non-movants, the relevant facts are not in dispute. In 2007, Mrs. Law personally guaranteed a commercial loan of over $2 million from a Florida bank to Alaga, LLC, a Florida LLC that she owned with her cousin. Mrs. Law renewed the guarantees twice. As of October 2008, Mrs. Law's assets amounted to approximately $1.5 million. Alaga defaulted on the loan in late 2009. In a letter dated January 20, 2010, the bank notified Mrs. Law that the loan was in default and informed her that if she did not pay the overdue amounts within 10 days, the bank would accelerate the entire amount of the loan and seek to recover interest, attorney fees, and costs as well. In an

---

[2] See OCGA § 18-2-70 et seq., the Georgia "Uniform Voidable Transactions Act," known before 2015 (and thus at the time of the 2010 and 2012 transactions at issue) as the Georgia "Uniform Fraudulent Transfers Act." OCGA § 18-2-70; Ga. L. 2015 p. 996, 1019-1027, 1029 §§ 4A-1, 7-1. For simplicity, we refer to the statutory scheme as the Uniform Act.

affidavit filed in response to SE Property's initial motion for summary judgment, Mrs. Law admitted that she had received the bank's January 2010 default letter "stating that the payments for December 2009 and January 2010 had not been made[,]" but averred that her cousin had resumed payments and that these had been accepted.

The loan, which had been renewed in April 2009 in an amount of more than $2 million, matured on April 15, 2010. Mrs. Law later averred that "in the spring of 2010," she learned that "there were some issues regarding the monthly payments on the note[,]" but that her cousin "assured" her that he was "taking care of" this problem such that until June 2010, she continued to send him "monthly payments for half of the interest due" on the loan.

In a deed dated January 2010 (without a day of the month) and recorded on April 22, 2010, only a week after the 2009 renewed note matured, Mrs. Law made the first of the four transfers at issue: that of seven acres, previously valued at $100,000, to September Properties, LLC in exchange for $1. This was followed by a deed dated November 11, 2010, transferring 312 Fifth Street, previously valued at $175,000, to September Properties, LLC in exchange for $1; a second deed dated November 11, 2010, transferring Mrs. Law's 50 percent interest in a property on Maddox Road to Mr. Law in exchange for $1; and a deed dated April 6, 2012, transferring the

3

residential property on Oxford Drive in Griffin, previously valued at $250,000, from Mrs. Law to herself and her husband as joint tenants with right of survivorship. In the meantime, the bank sued Mrs. Law pursuant to her guarantees in October 2010, eventually obtaining a Florida judgment for more than $2.5 million in February 2012. In May 2012, the Florida judgment was domesticated in Spalding County Superior Court.

In July 2012, SE Property, the bank's successor in interest, brought this action to set aside the transfers made by Mrs. Law on the ground that they were fraudulent. SE Property later moved for partial summary judgment as to its constructive fraud claim. At her 2014 deposition, Mrs. Law responded to a question as to whether she was surprised when the bank sued her in October 2010 by stating that by June 2010, she and her cousin had stopped making payments on the loan "primarily because [they] were out of money," but also because the parties were in a dispute about the applicable interest rate. In response to SE Property's second motion for summary judgment, however, and without referencing her deposition testimony, Mrs. Law averred that "as of the dates of the transfer[s]" at issue, she "was not insolvent on a balance sheet basis," and that "outside of solely the debt related to the [j]udgment at

4

issue," she was "generally making payments" on her telephone, utility, credit card, and "other ordinary bills . . . as they came due at the time of the transfers[.]"

The trial court granted SE Property partial summary judgment on its constructive fraud claim. Specifically, the trial court found that the transfers "were made after the note [Mrs. Law] guaranteed was in default, or suit had been filed against her or a judgment had been rendered against her[,]" and also "made without monetary consideration . . . at a time [when] she was not paying her debts." This appeal followed.

We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. *City of St. Marys v. Reed*, 346 Ga. App. 508, 508-509 (816 SE2d 471) (2018). Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. at 508; see OCGA § 9-11-56 (c).

1. Appellants first argue that questions of fact remain as to (a) whether Mrs. Law received reasonably equivalent value for the transfers and (b) whether she was insolvent when she made them.

Under the Uniform Act, fraudulent transfers "are broadly separated into two classifications: actual fraud and constructive fraud." (Citation and punctuation omitted.) *Truelove v. Buckley*, 318 Ga. App. 207, 210 (1) (733 SE2d 499) (2012). Former OCGA § 18-2-75 (a), in effect at the time of these transfers,[3] provided:

> A transfer made or obligation incurred by a debtor is *fraudulent as to a creditor whose claim arose before the transfer was made* or the obligation was incurred if the debtor made the transfer or incurred the obligation *without receiving a reasonably equivalent value in exchange* for the transfer or obligation *and the debtor was insolvent at that time* or the debtor became insolvent as a result of the transfer or obligation.

(Emphasis supplied.) As to insolvency, former OCGA § 18-2-72 provided:

> (a) A debtor is *insolvent if the sum of the debtor's debts is greater than all of the debtor's assets*, at a fair valuation.

> (b) *A debtor who is generally not paying his or her debts as they become due is presumed to be insolvent.*

(Emphasis supplied.) Under this framework, we consider whether questions of fact remain as to (a) Mrs. Law's receipt of "reasonably equivalent value in exchange" for each transfer *as well as* (b) whether she was insolvent, either because the sum of her

---

[3] For the 2015 amendments, see Ga. L. 2015, 996, 1019-1027, § 4A-1, effective July 1, 2015.

6

debts was greater than her assets or because she was generally not paying her debts, at the time she made each of the transfers. See OCGA §§ 18-2-72 (a), (b), 18-2-75 (a).

(a) *Receipt of Reasonably Equivalent Value.* As to the April 2010 transfer of the seven acres, which her March 2010 list of real estate property[4] listed as worth $100,000, the record shows that Mrs. Law transferred her 100 percent interest in the property to September Properties, LLC, which she owned jointly with her husband. Likewise, as to the November 2010 transfer of 312 South Fifth Street, which the same personal financial statement listed as worth $175,000, Mrs. Law transferred her 100 percent ownership in the property to the same LLC.

Relying on *Word v. Stidham*, 271 Ga. App. 435 (609 SE2d 651) (2004), appellants argue that there is a genuine issue of material fact as to whether Mrs. Law received an ownership interest in September Properties, LLC that was reasonably equivalent in value to the interest she had in the two properties she transferred to the LLC. Appellants' reliance on *Word* is misplaced. In *Word*, a judgment debtor and his sister transferred jointly owned property to an LLC. Id. at 435. As consideration for his transfer, the judgment debtor received a one-half interest in the LLC. Id. at 435-

_____

[4] As it appears as an exhibit to SE Property's motion for summary judgment, this list is not a part of any comprehensive financial statement for that year.

7

436. The property previously owned by the judgment debtor and his sister was the LLC's sole asset, and it did not appear from the record that the LLC had any countervailing liabilities. Id. at 437. The Court of Appeals held that there was a material issue of fact because the record would support a finding that the judgment debtor's one-half interest in the LLC was reasonably equivalent in value to the one-half interest he had in the property transferred to the LLC. Id. at 437. Here, in contrast, Mrs. Law owned a 100 percent interest in each property that she transferred to the jointly owned LLC. Consequently, the record would not support a finding that Mrs. Law received an interest in September Properties, LLC reasonably equivalent to the value of the properties she transferred to the LLC.

Appellants do not attempt to show on appeal that Mrs. Law received reasonably equivalent value for the remaining November 2010 and April 2010 transfers. On this record, there was no error in the trial court's conclusion that Mrs. Law did not receive reasonably equivalent value for any of these four transfers.

(b) *Insolvency.* (i) *The April 2010 Transfer.* We cannot conclude, however, that SE Property has provided evidence to show as a matter of law that on April 22, 2010, and "at a fair valuation," Mrs. Law's liabilities exceeded her assets, or that she was "generally not paying her debts" at that time such that a presumption of insolvency

8

should apply. OCGA § 18-2-72 (a), (b). As the movant for summary judgment, it was SE Property's burden to provide the trial court with evidence of Mrs. Law's balance sheet at or around the time between April 15, 2010, when the loan matured, and April 22, 2010, when the first transfer was recorded. No 2010 balance sheet was attached to either of Mrs. Law's affidavits, and SE Property provided none in support of its motion. SE Property's citation to the 2012 judgment against Mrs. Law for over $2.5 million, approximately $1 million greater than her net worth as calculated in 2008, does not fill this evidentiary gap, because it does not present more than a suggestion as to her actual balance sheet at the time of the April 22, 2010 transfer.

Furthermore, the record contains no evidence that Mrs. Law was not paying her debts as they became due as of April 22, 2010 (other than the debt to SE Property). Pretermitting whether the failure to pay a single creditor can be considered "generally not paying" for purposes of the Uniform Act,[5] SE Property cannot make a showing of insolvency within the meaning of the Uniform Act in the absence of additional evidence as to the value of SE Property's debt within the context of Mrs. Law's total

---

[5] See *In re Gregg*, 2013 WL 3989061, *17 (Bankr. M.D. Ga., decided July 2, 2013) (recognizing that at least one court has held that the failure to pay a single creditor can be considered "generally not paying" when the creditor's claim constituted 97 percent of a debtor's debt).

9

liabilities. See *Target Corp. v. Amerson*, 326 Ga. App. 734, 742 (1) (g) (755 SE2d 333) (2014) (reversing a jury verdict when a creditor could not show that a debtor was insolvent as defined by OCGA § 18-2-72 due to "the absence of additional evidence as to the value of [the creditor's] debt within the context of the [debtors'] total liabilities").

(ii) *The November 2010 and April 2012 Transfers.* It is undisputed that in October 2010, before the second, third, and fourth transfers at issue, the bank sued the two guarantors for the outstanding amount. At her deposition, Mrs. Law testified that by June 2010, she and her cousin had stopped making payments on the loan "primarily because [they] were out of money," but also because the parties were in a dispute over the applicable interest rate. In her second affidavit, however, and without referencing her deposition testimony, Mrs. Law testified that she was not insolvent at any of the times at issue.

On motion for summary judgment, "[t]he burden rests upon the party giving . . . contradictory testimony to offer a reasonable explanation, and whether this has been done is an issue of law for the trial judge." (Citation and punctuation omitted.) *Rapp v. Escante, Inc.*, 304 Ga. App. 262, 264-265 (1) (695 SE2d 744) (2010). Here, Mrs. Law has provided no explanation, either below or on appeal, for the

contradiction between her deposition and affidavit testimony on the issue of her insolvency no later than June 2010. Because there is no evidence allowing a reasonable inference that her insolvent status changed from that point forward, including the entry of a judgment of more than $2.5 million against her in February 2012, the trial court did not err when it concluded that she was insolvent at the time of the November 2010 and April 2012 transfers. Id. at 265 (1) (affirming trial court's finding that debtor was insolvent at the time of transfers at issue when its rejection of the debtor's explanation was "authorized by the record").

2. Appellants also argue that the trial court erred when it refused to grant Mrs. Law a homestead exemption concerning the Oxford Drive property, where she continues to live. We agree.

OCGA § 44-13-120, which has not previously been construed by a Georgia appellate court,[6] provides as follows:

> As against a domesticated judgment from another state, a judgment debtor resident in Georgia shall be entitled to assert, in addition to any other exemption under Georgia law, an exemption from levy and sale and any other process equal to the exemption which would be provided

---

[6] See Ga. L. 2004, Act 513, § 1, effective July 1, 2004.

to the judgment debtor by the law of the state in which the judgment was entered if the judgment debtor were a resident of that state.

Appellants contend that, under OCGA § 44-13-120, Mrs. Law is entitled to assert an exemption against the domesticated Florida judgment equal to the homestead exemption which would be provided by Florida law to a Florida resident. The Florida constitution provides, in relevant part:

> There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon . . . the following property owned by a natural person:
>
> (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon . . .; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family[.]

Fla. Const. Art. 10, § 4 (a).

In interpreting statutes, we "presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). And in determining a statute's meaning, "we apply the fundamental rules of statutory construction that require us to

12

construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citation and punctuation omitted.) *Coates v. State*, 304 Ga. 329, 330 (818 SE2d 622) (2018).

The trial court concluded that Mrs. Law "could not exempt her Georgia residence under Florida's homestead exemption as read in conjunction with OCGA § 44-13-120 because Florida's homestead exemption cannot be applied to property located outside the State of Florida." As SE Property points out, two Florida bankruptcy courts have held that Florida law extends its homestead exemption only to homesteads actually located in Florida. In *In re Sanders*, 72 B.R. 124 (Bankr. M.D. Fla. 1987), the bankruptcy court found that the Florida Constitution "implicit[ly]" imposes "the requirement that the property being claimed as exempt homestead be located in the State of Florida." Id. at 125 (6). Likewise, in *In re Schlakman*, 2007 WL 1482011 (Bankr. S. D. Fla. 2007), the court relied on *Sanders* and law from other jurisdictions to conclude that "Florida courts have construed the Florida Constitution to require that a homestead be located within the State of Florida for the Florida homestead exemption to be applicable." Id. at *3.

SE Property argues that because Florida courts do not allow extraterritorial application of the Florida homestead exemption, Mrs. Law is not entitled to exempt her Georgia residence because OCGA § 44-13-120 "clearly states that [Mrs. Law] is only entitled to an exemption which would be provided 'if the judgment debtor were a resident of that state.'" However, when a Florida judgment is domesticated in Georgia, OCGA § 44-13-120 creates an exemption under Georgia law *equal to* the Florida homestead exemption. The word "equal" is commonly defined as "of the same measure, quantity, amount, or number as another" or "like in quality, nature, or status[.]" Merriam-webster.com/dictionary/equal (last visited August 8, 2022). Essentially, SE Property asks us to ignore the phrase "an exemption equal to[.]" See OCGA § 44-13-120. Avoiding, as we must, a construction that makes this language mere surplusage, we conclude that, under the plain language of the statute, Mrs. Law is entitled under Georgia law to assert an exemption *equal to* the Florida homestead exemption. OCGA § 44-13-120. An exemption equal to the Florida homestead exemption would exempt "a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon . . .; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the

14

owner's family[.]" Fla. Const. Art. 10, § 4 (a). Consequently, the trial court erred in concluding that Mrs. Law could not exempt her Georgia residence under OCGA § 44-13-120.

*Judgment affirmed in part and reversed in part. Miller, P. J., and Pipkin, J., concur.*